```
                                    ┌─────────────────────────────────┐
                                    │ ✓  FILED        ___ RECEIVED     │
                                    │ ___ ENTERED     ___ SERVED ON    │
                                    │        COUNSEL/PARTIES OF RECORD │
                                    │   ┌─────────────────────────┐    │
                                    │   │      MAR 1 8 2011        │    │
                                    │   └─────────────────────────┘    │
                                    │     CLERK US DISTRICT COURT       │
                                    │      DISTRICT OF NEVADA           │
                                    │ BY:_____ DEPUTY │
                                    └─────────────────────────────────┘
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TRUSTEES OF THE NORTHERN NEVADA )
OPERATING ENGINEERS HEALTH &  )
WELFARE TRUST FUND, et al.,   )
                            )         3:09-cv-347-RCJ-VPC

         Plaintiffs,       )

       v.                  )           **ORDER**

CRUZ EXCAVATING, INC., a California )
corporation; ZEPHYR COMPANIES, INC., a )
Nevada corporation; SCOTT FREIDUS; )
DOES 1-100; and BLACK AND WHITE )
COMPANIES 101-200, )
               Defendants. )
_____

    Currently before the Court is Plaintiffs' Application for Judgment by Default (#12).  The Court head oral argument on the motion on March 7, 2011.

## BACKGROUND

    In July 2009, Plaintiffs, the Chairman and Co-Chairman of the Boards of Trustees of multiple Trust funds,[1] filed a complaint against Cruz Excavating, Inc., Zephyr Companies, Inc., and Scott Friedus (collectively "Defendants"). (See Complaint (#1) at 1). Plaintiffs alleged that

---

    [1] These trust funds include: (1) the Northern Nevada Operating Engineers Health and Welfare Trust Fund; (2) the Operating Engineers and Participating Employers Preapprentice, Apprentice, and Journeyman Affirmative Action Training Fund for Northern Nevada; (3) the Operating Engineers Pension Trust Fund; (4) the Operating Engineers Vacation and Holiday Pay Plan; and (5) the Operating Engineers Pensioned Operating Engineers Health and Welfare Trust Fund (collectively "Plaintiffs" or "Trust Funds"). (See Complaint (#1) at 1-2).

they brought this action pursuant to their fiduciary duties imposed under 29 U.S.C. § 1104(a)(1). (*Id.* at 4-6). The first cause of action alleged payment of unpaid contributions under the Employee Retirement Income Security Act of 1974 ("ERISA") pursuant to 29 U.S.C. § 1132(a)(3), (g). (*Id.* at 3-4). Plaintiffs alleged that Defendants agreed to be bound by the Collective Bargaining Agreements ("CBAs"). (*Id.* at 3). The CBAs consisted of the Independent Northern Nevada Construction Agreement ("Short Form Agreement") between Defendants and the Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO (the "Union") and the Master Agreement for Northern Nevada between Defendants and the Nevada Chapter of the Associated General Contractors of America, Inc. and the Union. (*Id.*). Pursuant to the CBAs, Defendants agreed to make fringe benefit payments to the Trust Funds for every hour worked by individuals performing work as operating engineers. (*Id.*). Defendants agreed to timely submit employer contribution reporting forms to Plaintiffs on a monthly basis and agreed to permit Plaintiffs to inspect their books and records regarding any payment due to the Trust Funds. (*Id.* at 4). Defendants failed to report and contribute to the Trust Funds. (*Id.*). Defendants have not paid contributions, interest, or liquidated damages to date, and have not submitted corrected reports. (*Id.*). Plaintiffs alleged that they had to hire attorneys to enforce Defendants' obligations under the CBAs. (*Id.*)

The second cause of action alleged an action to compel the filing of accurate monthly reports under 29 U.S.C. § 1132(a)(3), (g). (*Id.*). Plaintiffs alleged that Defendants failed to submit accurate and timely employer contribution reporting forms that detailed the number of hours worked by all operating-engineer employees and the amount of contributions owed. (*Id.* at 5).

The third cause of action alleged an action to compel an audit under 29 U.S.C. § 1132(a)(3), (g). (*Id.*). Plaintiffs alleged that Defendants agreed to permit them to inspect their books and records regarding any payment due to the Trust Funds in order to determine the true and correct sum. (*Id.*). Defendants refusal to comply with their obligations has made it impossible for Plaintiffs, absent a complete audit, to determine the full extent of the

1  delinquent contributions, interest, and damages owed by Defendants. (*Id.*).

2  The fourth cause of action alleged guarantor liability for payment of unpaid contributions
3  under 29 U.S.C. § 1132(a)(3), (g). (*Id.* at 6). Plaintiffs alleged that the Short Form Agreement
4  provided that Defendants' principal shareholders personally guaranteed all payment of wages
5  and fringe benefits, including fringe benefit contributions, liquidated damages, interest and
6  collection costs, including attorney's fees and audit/accountant fees. (*Id.*). Plaintiffs alleged
7  that Freidus was Defendants' principal shareholder. (*Id.*). Plaintiffs alleged that, pursuant to
8  the agreement, Freidus became personally liable for the payments and has failed to perform
9  his personal guarantee obligations under the Short Form Agreement. (*Id.*).

10  Plaintiffs sought the following relief: (a) to compel Defendants to submit to an audit of
11  their books and records, including Defendants' payroll and tax records; (b) the amount of the
12  incomplete contributions; (c) interest assessed on the delinquent contributions calculated at
13  a rate of 12% per annum; (d) the greater of either the statutory interest assessed on the
14  delinquent contributions at the rate of 12% per annum or liquidated damages assessed on the
15  delinquent contributions in the amount of the greater of 12% of each delinquency or $35.00
16  per each delinquency; (e) the cost of the audit; (f) the costs of filing this action; and (g) for all
17  attorneys' fees and costs of this action. (*Id.* at 6-7).

18  In July 2009, Plaintiffs served all three Defendants. (*See* Summons (#4, 5, 6)). In
19  August 2009, Plaintiffs gave Defendants notice of their intent to take default for failure to file
20  an answer or otherwise respond to the complaint. (Notice of Intent (#7)). That same month,
21  Plaintiffs filed an application for entry of default. (Appl. for Entry of Default (#8)). On August
22  19, 2009, the clerk entered default against all three Defendants. (Default (#9)). That same
23  day, Plaintiffs sent Defendants a notice of entry of default. (Notice of Entry of Default (#10)).
24  In March 2010, Plaintiffs filed the pending application for default judgment. (Appl. for Default
25  Judgment (#12)). Defendants have never made an appearance in this case. (*See generally*
26  Docket Sheet).

27  **DISCUSSION**

28  In the default judgment application, Plaintiffs asserted that Defendants' total

3

1  delinquency was $471,805.19 based on affidavits from the Trust Funds' collection

2  manager, (Wayne McBride Aff. (#12-3) at 2), and a Certified Public Accountant at Kafoury

3  Armstrong & Co., (Kristen Burgess Aff. (#12-3) at 7). (*See* Appl. for Default Judgment

4  (#12) at 5-7). Plaintiffs filed a supplement to the default judgment application stating that

5  they obtained a settlement from Financial Pacific Insurance Company in the amount of

6  $55,232.76 and, thus, the default judgment should reflect a credit with that amount.

7  (Suppl. to Appl. for Default Judgment (#13) at 1-2).

8       Federal Rule of Civil Procedure 55(b) provides that the "court may conduct hearings

9  or make referrals–preserving any federal statutory right to a jury trial–when, to enter or

10  effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of

11  damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other

12  matter." Fed. R. Civ. P. 55(b)(2)(A)-(D). "Rule 55 gives the court considerable leeway as

13  to what it may require as a prerequisite to the entry of a default judgment." *TeleVideo Sys.,*

14  *Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). "The general rule of law is that upon

15  default the factual allegations of the complaint, except those relating to the amount of

16  damages, will be taken as true." *Id.* at 917-18.

17       The court may consider the following factors in determining whether to exercise

18  discretion as to the entry of default judgment: "(1) the possibility of prejudice to the plaintiff,

19  (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the

20  sum of money at stake in the action; (5) the possibility of a dispute concerning material

21  facts; (6) whether the default was due to excusable neglect, and (7) the strong policy

22  underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v.*

23  *McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

24       ERISA provides that a fiduciary may bring a civil action to "(A) to enjoin any act or

25  practice which violates any provision of this subchapter or the terms of the plan, or (B) to

26  obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any

27  provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

28       Plaintiffs assert that they are trying to enforce the terms of the CBAs. (*See* Appl. for

4

Default Judgment (#12) at 3). However, the CBAs are not in the record. Therefore, this Court cannot evaluate the merits of Plaintiffs' substantive claims that Defendants are violating the CBAs or determine the amount of damages based on interest rates listed in the CBAs. Accordingly, the Court denies the application without prejudice. Upon refiling, Plaintiffs should supplement the application with the CBAs, the basis for the guaranty claims, and a basis for the calculations.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Application for Judgment by Default (#12) is denied without prejudice.


DATED: This ___18th___ day of March, 2011.


_____
United States District Judge

5